IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

OHIO POWER COMPANY,

       Plaintiff,

v.                                               Civil Action No. 5:11CV164
                                                              (STAMP)

DEARBORN MID-WEST CONVEYOR
COMPANY, INC.,

       Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING, WITHOUT PREJUDICE, DEFENDANT'S MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION,
DENYING AS MOOT DEFENDANT'S MOTION FOR
LEAVE TO FILE THIRD-PARTY COMPLAINT
AND DENYING AS MOOT DEFENDANT'S
MOTION TO MODIFY SCHEDULING ORDER**

I.  Procedural History

The plaintiff, Ohio Power Company ("OPC") commenced this civil action by filing a complaint in the Circuit Court of Marshall County, West Virginia. This case arises out of an explosion that occurred on October 14, 2009 within OPC's sulfur reclaim tunnel -- a structure designed and constructed by the defendant, Dearborn Mid-West Conveyor Company, Inc. ("Dearborn"). The complaint sets forth claims of negligence, strict liability, breach of contract, breach of warranty, and indemnification and seeks damages for all costs to repair and redesign the coal tunnel, business interruption, attorney's fees, and other expenses caused by the damage to the sulfur coal reclaim tunnel.

Shortly after the defendant removed the case to this Court, Dearborn filed a motion to dismiss for lack of subject matter jurisdiction. In support of its motion to dismiss, Dearborn argues that, pursuant to the provisions of the contract between OPC and Dearborn, mediation is a condition precedent to litigation, and because the plaintiff failed to request or invoke mediation before filing this lawsuit, this case must be dismissed for lack of subject matter jurisdiction. In response, OPC argues that there exists no applicable contractual provision requiring OPC to submit its claims to mediation. OPC also argues that the defendant, through its conduct, has waived any right to now seek the enforcement of the mediation provision. Alternatively, OPC requests that if the Court finds that the disputed provision is a prerequisite to litigation, then the Court should stay all proceedings pending the mediation process.

In reply, Dearborn reiterates its argument that the plain language of the contract mandates that OPC's claims should have been mediated. Also, Dearborn argues that there is no factual predicate to justify waiver or estoppel of its right to mediation.[1] The motion to dismiss is currently pending before this Court, and

---

[1] The defendant later filed an amended reply to correct certain typographical errors.

for the reasons set forth below, this Court finds that the motion to dismiss must be granted, but without prejudice.[2]

## II. Facts

OPC is the owner and operator of the Mitchell Power Plant located in Marshall County, West Virginia. Compl. ¶ 1. In 2004, as part of a construction project referred to as the Wet Flue Gas Desulferization Retrofit Project ("WFGD"), OPC contracted with Dearborn to design and construct a coal blending system.[3] Compl. ¶¶ 3-4. By contract dated October 7, 2005, Dearborn was to "furnish all engineering, design, materials, supervision, labor and equipment as may be required to provide a complete and operational coal blending system for WFGD." Compl. ¶ 5. Pursuant to the contract, Dearborn constructed the coal blending conveyor system at OPC's Mitchell facility, which was completed and operational around September 2006. Compl. ¶ 6. On October 14, 2009, an explosion occurred within the sulfur coal reclaim tunnel designed and constructed by Dearborn. Compl. ¶ 7. The explosion allegedly resulted in considerable damage to the coal reclaim tunnel, and the cost of repairs allegedly exceeds $3,000,000.00. Compl. ¶ 7.

---

[2]This Court notes that according to the report of the mediator filed on May 23, 2012, a settlement conference was held in this action on May 21, 2012.

[3]American Electric Power Service Corporation signed the contract as agent for OPC.

Dearborn was placed on notice of the explosion and of OPC's potential claims, and prior to filing the complaint, counsel for the parties discussed the claims. Pl.'s Resp. 2. The repairs to the sulfur coal reclaim tunnel took significant time to complete, meaning that OPC was unable to understand the full nature of the design defects and the amount of the damage until much later. Id. During this time, OPC was in contact with the defendant to advise it of the status of the repairs and the timing of its pursuit of its claim. Id. Ultimately, on October 5, 2011, counsel for the plaintiff contacted the defendant to advise of his intent to file the present action and to invite the defendant to engage in settlement discussions. Pl.'s Resp. 3. Settlement discussions were not held, and prior to the filing of the complaint, the defendant did not raise the issue of the mandatory mediation process set forth in Article 43.0 of the contract. Id.

### III. Applicable Law

A party may move to dismiss an action for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. A motion pursuant to Rule 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (internal quotations and citations omitted). The burden of proving that subject matter jurisdiction exists rests with the plaintiff.

Id. When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id.; see also Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) ("A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.").

A lack of subject matter jurisdiction may be asserted at any time by any interested party either in the form of the answer or in the form of a suggestion to the court prior to final judgment. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 1998). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh evidence outside of the pleadings to determine the existence of its jurisdiction. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Materson v. Stokes, 166 F.R.D. 368, 371 (E.D. Va. 1996). If the court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

## IV. Discussion

In support of its motion to dismiss for lack of subject matter jurisdiction, the defendant asserts three main claims: (1) failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to litigation warrants dismissal; (2) Ohio contract law applies and requires that the mediation provision be enforced; and (3) the plaintiff's claims arise out of or relate to the contract. In its response, OPC does not dispute that the American Electric Power General Terms and Conditions for Generation Projects are a part of the contract or that its terms are enforceable. However, OPC contends that the section of the contract concerning disputes, Article 43.0, has no application to the present action because it only applies to resolve disputes which arise <u>during</u> the applicable construction project and cannot be applied to disputes that arise <u>following</u> the completion of the contract. Therefore, according to the plaintiff, there exists no applicable contractual provision requiring OPC to submit its claims to mediation. OPC also argues that despite being provided with a copy of the complaint and receiving a request to engage in settlement discussions, the defendant refused to attempt to resolve the claims, and thus is now estopped from seeking enforcement of Article 43.0.

A.  <u>Applicability of Article 43.0</u>

Article 43.0 of the American Electric Power General Terms and Conditions for Generation Projects states, in pertinent part:

> 43.1  The parties shall settle any dispute arising out of or relating to this Contract through the step negotiation and non-binding mediation set forth herein prior to the initiation of any litigation.  Good faith participation in these procedures shall be a condition precedent to any litigation.  All negotiations pursuant to this Section shall be confidential and shall be treated as compromise and settlement negotiations for purposes of the Federal Rules of Evidence and State Rules of Evidence.

Def.'s Mot. to Dismiss Ex. A, Art. 43.1.  The contract also provides that "Except for Article 20.0 [regarding indemnification], the rights and obligations of the parties arising out of the Contract shall be governed in all respects by the laws of the State of Ohio."  Def.'s Mot. to Dismiss Ex. A, Art. 42.1.

This Court finds that the language of the contract is clear -- because OPC failed to seek resolution of its disputes under the mandatory mediation provision prior to filing suit, dismissal of this action is warranted.[4]  The plaintiff's argument regarding the limited application of Article 43.0 is without merit.  Article 43.1

---

[4] In its response to the motion to dismiss, OPC argues that the contract is not ambiguous and that Article 43.0 has no application to the present action.  The plaintiff goes on to argue that to the extent this Court deems an ambiguity to exist, this Court should consider the affidavit of Edward J. Jayjack to aid in the interpretation of the contract.  In its reply, Dearborn argues that the affidavit should be stricken because it is immaterial.  This Court agrees that Jayjack's affidavit is irrelevant because the contract is unambiguous.  However, it is not necessary to strike the affidavit from evidence, as this Court is permitted to consider evidence outside the pleadings on a Rule 12(b)(1) motion.

provides that "any dispute arising out of or relating to this Contract" must be mediated or settled through step negotiation. This language does not suggest, as the plaintiff argues, that Article 43.0 applies only to disputes that arise while the work is being performed. Had OPC desired to limit the disputes to which Article 43.0 applies to only those that arise during the construction project, it could have included language to that effect in the contract when it was drafted. The meaning of Article 43.0 can be determined from the four corners of the agreement, and the mere fact that it may be difficult to construe does not make the contract ambiguous. See Drews Distrib., Inc. v. Leisure Time Tech., Inc., 175 F.3d 1014 (4th Cir. 1999) (quoting McCann v. Glynn Lumber Co., 34 S.E.2d 839, 845 (Ga. 1945)).

In support of its interpretation of Article 43.0, the plaintiff cites Articles 43.3 and 43.5 of the contract. Article 43.3 sets forth the protocol to initiate the process to resolve a dispute relating to the contract, and Article 43.5 states, "[c]ontractor agrees to proceed with its Work, including disputed portions, during the pendency of these procedures." The plaintiff argues that once the construction has been completed and final payment tendered, the protocol of Article 43.3 is no longer relevant because there is no one at the "project team level" to address any dispute, nor is there a Managing Director of Project & Field Services. However, this Court finds that the existence, or

8

lack thereof, of a "project team" or "Managing Director of Project & Field Services" would not prevent the parties from shifting responsibilities to other executives in order to negotiate a dispute. In fact, the mediation provisions clearly set forth a series of negotiation steps, and barring resolution at one level, the parties are directed to seek resolution by proceeding to the next step in the process. Def.'s Mot. to Dismiss Ex. A, Art. 43.3. With regard to Article 43.5, this Court finds that the fact that the mediation procedure contemplates that work continue while disputes are mediated prior to the completion of the contract does <u>not</u> mean that the mediation procedure applies only to claims arising during the pendency of the contract.

The plaintiff also cites two other provisions as further support, by way of comparison, for its argument that Article 43.0 is inapplicable in the instant case. Pointing to Article 30.0, in which the defendant warrants the materials and workmanship for a period of one year following completion and acceptance of the work, the plaintiff highlights the portion which states: "Warranty claims hereunder are subject to the contract disputes procedures. However, the parties shall proceed with the remedies under this Article during pendency of such procedures." Def.'s Mot. to Dismiss Ex. A, Art. 30.7. According to the plaintiff, Article 30.0 relates only to the situation of permitting the work to be performed without delays due to litigation. In contrast, Article

9

20.0, which relates to indemnification obligations, contains no reference to the dispute procedures -- instead, it directly addresses the indemnity obligations of the parties in light of claims that may arise out of the contract. In the view of the plaintiff, the absence of any reference to the "disputes" article in Article 20.0 is noteworthy because it indicates that Article 43.0 does not apply to the present action, which concerns litigation between the parties for liability, claims and costs which arise from the contract.

This Court finds no merit to the plaintiff's argument that Article 43.0 is inapplicable to this dispute. Article 30.7, cited by the plaintiff in what appears to be an attempt to distinguish between claims arising while the work is being performed versus claims arising subsequent to the completion of the project, specifically states that "[w]arranty claims hereunder are subject to the contract disputes procedures." There is no reason to assume that this language applies only to disputes that arise during the pendency of the project. Rather, the plain and unambiguous language of the contract makes clear that the claims in this action are subject to the mediation requirement of Article 43.0.

The plaintiff's reliance on the lack of any reference to the mediation provisions in the contract's indemnification section, Article 20.0, is also misplaced. A claim by OPC against a contractor for indemnification against third-party claims is an

attempt by OPC to pass responsibility of the third-party claim along to the contractor. The substance of the third-party claim could not be mediated as between OPC and the contractor, thus, it is illogical to suggest that mediation would apply in the context of a third-party indemnity claim. It follows that the lack of a mandatory mediation provision in the identification article does not suggest that the mandatory mediation dispute procedure is inapplicable to other disputes that arise from the contract.

B. <u>Choice of Law</u>

As the defendant correctly notes, the contract provides that, "[e]xcept for Article 20.0 [relating to indemnification issues], the rights and obligations of the parties arising out of the Contract shall be governed in all respects by the laws of the State of Ohio." Def.'s Mot. to Dismiss Ex. A, Art. 42.1. Applying the choice of law rules of West Virginia, the defendant concludes that Ohio law governs the application of the mandatory mediation provision, as the parties chose Ohio law to govern the contract. According to the defendant, Ohio law clearly favors the enforcement of the mediation provision and requires that the case be dismissed for failure to follow the same.

In its response, the plaintiff does not address the defendant's argument that Ohio contract law applies and requires that the mediation provision be enforced. Instead, the plaintiff claims that resolution of the choice of law issues is not necessary

11

to properly address the present motion. The plaintiff does acknowledge, however, that the express language and terms utilized in the contract will be given their effect so as to reveal the parties' intention. In this case, it was clearly the intention of the parties that Ohio law govern all rights and obligations of the parties arising out of the contract, except for indemnification issues. Because the plaintiff does not argue against the application of Ohio law, and because this Court agrees that Ohio courts favor alternative dispute resolution provisions, this Court finds that Ohio law favors the enforcement of the mediation provision in this case. See Acme Arsena Co., Inc. v. J. Holden Constr. Co., Ltd., No. 91450, 2008 WL 5182912, at *2 (Ohio App. Dec. 11, 2008) (recognizing that alternative dispute resolutions are a favored practice of both Ohio and federal courts that there is a strong presumption in favor of avenues other than lengthy litigation to settle disputes between parties).

C. Claims Relating to the Contract

Lastly, the defendant argues in support of its motion to dismiss that the plaintiff's claims arise out of or relate to the contract. Specifically, the defendant asserts that OPC's claims arise from the scope of work to be performed by Dearborn on the project as defined by the contract. In the complaint, OPC asserts that Dearborn's negligence arises out of and relates to having tortuously breached its legal duty to properly engineer, design,

12

construct, install and manage portions of the work. In the view of the defendant, these alleged legal duties are created by the fact that there is a contract which establishes the relationship and obligations between the parties. The defendant concludes by arguing that because all of the plaintiff's claims are premised on the alleged breach of express or implied terms of the contract, these claims should have undergone mandatory mediation as a condition precedent to filing this civil action.

In its response, the plaintiff counters that its indemnity claim arises from an event occurring more than one year after completion of the contract and does not fall within Article 30.0. Therefore, according to the plaintiff, Article 43.0 does not apply to the warranty and indemnity claims set forth in Counts III and IV of the complaint. Pl.'s Resp. n.11. The plaintiff argues that Article 20.0, which relates to indemnification obligations and contains no reference to Article 43.0 or the dispute procedures, is the article under which the claims in this case fall.

This Court disagrees with the plaintiff's position. All of the claims in this civil action arise out of and relate to the contract. If there was a legal duty on the part of Dearborn to properly engineer, design, construct, install and manage portions of the work, as OPC alleges, this duty arises solely from the fact that OPC and Dearborn are in privity of contract. The plaintiff acknowledges that Article 20.0 "is commonly invoked when OPC is

joined in a lawsuit by an employee of the contractor for injuries occurring on its premises. OPC would then pursue a cross-claim against the contractor for indemnification in accordance with this provision." Pl.'s Resp. n.13. The lawsuit that the plaintiff describes in its response is not the lawsuit that is before this Court. All four counts of the plaintiff's complaint assert claims that are "directly attributable to the defendant's performance under the contract at issue," and thus, should have gone to mandatory negotiation and mediation. Compl. ¶ 25.

D. <u>Waiver and/or Estoppel</u>

In its response to the motion to dismiss, the plaintiff argues that if this Court determines that Article 43.0 is applicable to the present litigation, the defendant, through its conduct, has waived any right to now seek the enforcement of the mediation provision. In support of this argument, OPC describes its attempts to notify the defendant of its claims and engage in settlement discussions prior to litigation. Specifically, the plaintiff states that prior to filing the complaint, it provided the defendant with a courtesy copy and requested to engage in settlement discussions. The plaintiff states that its request was rejected, and that the defendant advised it to file the complaint, without ever referencing the mediation provision.

In its reply, the defendant refutes the plaintiff's assertion that it encouraged the plaintiff to file and serve the complaint.

14

Further, the defendant contends that it did not reject settlement negotiations. Applying Ohio law, the defendant argues that it neither waived, nor is estopped from, asserting its right to mediation. This Court agrees. The Court of Appeals of Ohio has held:

> Waiver of the right to arbitrate is not to be lightly inferred. Because of the strong public policy in favor of arbitration, the heavy burden of proving waiver of the right to arbitration is on the party asserting a waiver. A party asserting waiver has to prove two elements: that the party waiving the right knew of the existing right of arbitration, and that it acted inconsistently with that right.
>
> An arbitration provision in a contract may be waived either by express words or by necessary implication. Thus, a plaintiff's filing of a complaint may be a waiver of that party's right to arbitrate. Similarly, other acts inconsistent with the right to proceed with arbitration, including actively participating in litigation, may effect a waiver.

Griffith v. Linton, 721 N.E.2d 146, 750-51 (Ohio App. 1998) (internal citations omitted). In this case, there is no evidence of either waiver or estoppel on the part of the defendant. The Fourth Circuit has found that a party waives its right to arbitration "only when the party seeking to enforce an arbitration clause 'so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing [enforcement of the provision].'" Tattoo Art, Inc. v. Tat Int'l, LLC, 711 F. Supp. 2d 645, 652-53 (E.D. Va. 2010) (quoting Patten Grading & Paving v. Skanska USA Building, Inc., 380 F.3d 200, 204 (4th Cir. 2004)). In Tattoo Art, Inc., the court applied

15

this test to a mediation provision similar to the provision at issue here and determined that the plaintiff had failed to carry its burden of proving waiver. This Court similarly finds that none of the defendant's actions represent an intentional relinquishment of its rights under the contract. Id. at 652. Moreover, the mere fact that Dearborn may have had notice of a potential claim by OPC does not create a duty on the part of Dearborn to resolve OPC's claim. OPC, as the claimant in this action, had the responsibility of abiding by the dispute procedures set forth in the contract. It was not the defendant's duty to remind the plaintiff of, or encourage the plaintiff to act in accordance with, the provisions in its own contract.

E. <u>Request to Stay Proceedings</u>

The plaintiff concludes its response in opposition to the motion to dismiss by requesting that this Court stay the proceedings pending the mediation process. The plaintiff argues that a stay is the appropriate course of action because it will enable OPC to avoid suffering significant prejudice. Specifically, OPC refers to the defendant's alleged intention to assert the statute of limitations as a bar upon the refiling of the plaintiff's claims. The plaintiff also contends that the Federal Arbitration Act ("FAA") is applicable to this case and requires a mandatory stay of proceedings. However, as the defendant correctly states in its reply, mediation is not within the scope of the FAA,

16

and thus, a stay is not mandatory. See <u>Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.</u>, 524 F.3d 1235, 1240 (11th Cir. 2008) ("In short, because the mediation process does not purport to adjudicate or resolve a case in any way, it is not 'arbitration' within the meaning of the FAA. Accordingly, FAA remedies, including mandatory stays and motions to compel, are not appropriately invoked to compel mediation."); see also <u>Perdue Farms, Inc. v. Design Build Contracting Corp.</u>, 263 F. App'x 380, 384 (4th Cir. 2008) (holding that the FAA does not compel a court to stay litigation where the contract itself does not call for arbitration); <u>Tattoo Art, Inc.</u>, 711 F. Supp. 2d at 650 n.2 (collecting cases and noting that some courts have found that mediation is a type of alternative dispute resolution falling with the FAA while the Eleventh Circuit has not). This case presents the question of whether the parties agreed to make mandatory mediation a condition precedent to litigation. This Court finds that they did. Therefore, this action must be dismissed without prejudice. See <u>Tattoo Art, Inc.</u>, 711 F. Supp. 2d at 652 (finding that failure to satisfy the condition precedent necessary to trigger the right to initiate litigation requires dismissal without prejudice).

## V. <u>Conclusion</u>

For the reasons set forth above, this Court finds that the defendant's motion to dismiss for lack of subject matter

17

jurisdiction (ECF No. 7) must be GRANTED, but without prejudice. Further, the defendant's motion for leave to file a third-party complaint (ECF No. 21) is DENIED AS MOOT, and the defendant's motion to modify the scheduling order (ECF No. 22) is DENIED AS MOOT. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

    IT IS SO ORDERED.

    The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

    DATED:    June 29, 2012

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE